FISHER | TAUBENFELD LLP

225 Broadway, Suite 1700
New York, New York 10007
**Main** 212.571.0700
**Fax** 212.505.2001
www.fishertaubenfeld.com

Writer's direct dial: (212) 571-0700 ex. 102
Writer's email: michael@fishertaubenfeld.com

June 30, 2022

**VIA ECF**
Hon. Katharine H. Parker
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

        Re: Plumitallo v. Unum Group
          SDNY Case No.: 22-cv-1391 (KHP)

Dear Judge Parker:

      We represent Plaintiff in this action. The parties write to respectfully request that the Court approve their settlement as fair and reasonable under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).

      **1. Factual Background and Procedural History.**

      Plaintiff worked for Defendant from 1999 until April 2021. Plaintiff held several titles over the course of his employment with Defendant, starting as an Administrative Assistant, but beginning in 2013, Plaintiff became a Client Manager, which required Plaintiff to meet with customers to sell insurance products. From 1999 until March 2020, Plaintiff was based in Defendant's Manhattan location and worked as an outside salesman and was thus exempt from overtime requirements under the FLSA and NYLL's outside sales exemption. Beginning in March 2020, however, Plaintiff began working exclusively from home and no longer met with clients in person because of the COVID-19 pandemic. Plaintiff continued working from home until the end of his employment in April 2021.

      Despite Plaintiff's no longer working as an outside salesman beginning in March 2020, Defendant continued to treat Plaintiff as exempt from overtime. From March 2020 until April 2021, Plaintiff alleges that he typically worked from 8:00 a.m. to 7:00 p.m. or later each weekday, and often for 3-4 hours each day on weekends. Plaintiff therefore claims he worked approximately 62 hours per week. From 2013 until Plaintiff was terminated in April 2021,

Defendant paid Plaintiff an annual salary of $79,300, plus commission if Plaintiff's sales were greater than $9,300 annually. Plaintiff also claims that from March 2020 and on Defendant failed to provide Plaintiff with a NYLL-compliant wage statement because the paystub did not reflect the hours Plaintiff actually worked. Plaintiff calculated a total of $72,448.49 for his unpaid overtime wages, the same amount for liquidated damages, and $5,000 for NYLL §195 violations.

Plaintiff filed this case in February 2022. Pursuant to the Court's mediation order, the parties exchanged pre-mediation disclosures. The parties then attended a court-annexed mediation. At the mediation, it became clear that there were substantial disagreements of fact and law that created significant risk for Plaintiff to continue with this action. Regarding Plaintiff's hours, Defendant disputed that Plaintiff worked the hours he claimed. But most importantly, Defendant claimed that Plaintiff was exempt from overtime pay under the FLSA and NYLL as an outside salesman. All parties to this case acknowledged that Plaintiff was appropriately classified as an outside salesman until COVID prevented him from traveling to meet with customers. Plaintiff, however, argued that because he stopped meeting customers once COVID began, he was no longer eligible for the outside sales exemption because he was not "customarily and regularly engaged away from the employer's place or places of business." 29 C.F.R. § 541.500. Defendant, conversely, claimed that it could continue to rely on the exemption because COVID constituted as "emergency" under 29 C.F.R. § 541.706, which allows an employer to continue treating an employee as exempt even if because of an emergency the employee no longer strictly qualifies for the exemption. To the parties' knowledge, no court had issued a decision on this issue.

The parties continued their negotiations and ultimately, the parties reached a settlement in principle and finalized it on June 30, 2022 (**Exhibit 1**).[1] Under the Agreement, Plaintiff is to receive $21,000 in approximately 30 days after settlement approval, and in exchange Plaintiff agrees to release his FLSA and NYLL claims. There is no confidentiality clause in the agreement. Under the Agreement, of the $21,000, Plaintiff will receive $14,000, and my firm will receive $7,000.00 in attorneys' fees, which represents one-third of the settlement.[2]

### 2. The Settlement is Proper Under Cheeks.

The Court should approve the settlement. In determining whether to approve a settlement, courts often look at the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length

---

[1] The parties also entered a separate severance agreement providing to Plaintiff $11,500, which the parties are attaching as **Exhibit 2**. Because this agreement does not settle FLSA claims, the Court does not have to approve it. Pavone v. Diesel U.S.A., Inc., No. 21 CIV. 5219 (PAE), 2022 WL 1177344, at *2 (S.D.N.Y. Mar. 2, 2022) (declining to require approval of separate non-FLSA settlement and noting that "district courts' approaches to bifurcation of settlement have varied; some courts permit bifurcated settlements, while others require parties to submit the non-FLSA settlement for court review.")

[2] My firm will receive additional fees and reimbursement for costs in the separate severance agreement that is attached as Exhibit 2.

2

bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Guajardo v. Titan Constr. Servs. LLC, No. 19-CV-1551 (OTW), 2020 WL 1922642, at *2 (S.D.N.Y. Apr. 21, 2020).

The settlement is reasonable under these factors. The settlement amount constitutes approximately 20% of Plaintiff's best-case unpaid overtime damages under the FLSA and NYLL. Given the significant the risks and burdens of this litigation, however, that amount is justified. Notably, as explained above, Plaintiff bears the risk that he was an exempt outside salesman. He therefore would receive nothing if the Court finds that he was exempt under the FLSA and NYLL as an outside salesman. That question is one of first impression and only arose because COVID lockdowns required formerly outside salesmen to work from home. Another risk is the method of calculating damages. Plaintiff's extensive damages are calculated by dividing his salary by 40 and multiplying the quotient by 1.5. Specifically Plaintiff's weekly pay was $1,525.35. Plaintiff divided that number by 40 to reach an hourly rate of $38.13. That number multiplied by 1.5 is $57.20 for the overtime rate. Plaintiff then multiplied that overtime rate by 22 overtime hours for a total of $1,258.41 overtime damages per week and then multiplied that number by 57.57, the number of weeks he worked as a putatively nonexempt employee. The total is $72,448.49.

While this methodology benefits Plaintiff, many district courts in this Circuit have calculated damages by dividing the weekly salary by the total hours worked and then dividing the quotient by .5. See, Cronk v. Hudson Valley Roofing & Sheetmetal, Inc., 538 F. Supp. 3d 310, 322 (S.D.N.Y. 2021) (citing cases). Under that method, Plaintiff's hourly rate is $12.30 ($1,525.35/62)*.5). Plaintiff's weekly overtime damages under that calculation are $270.62 ($12.30*22) and his total overtime damages are only $15,579. By this metric, Plaintiff is receiving in this settlement approximately all of his overtime damages after fees. The settlement amount is therefore reasonable.

Finally, Defendant disputes the hours Plaintiff claims he worked. At the mediation, Defendant argued that Plaintiff could not have worked that many hours and that his emails and other records will reflect that. While Plaintiff disputes that, there is a risk that the records will dispute his recollection of his hours.

Given all of these risks, Plaintiff benefits from receiving a large portion of his damages now without waiting potentially years to recover and taking the risk of recovering nothing at all.

Further, the parties negotiated in good faith and at arms-length with the assistance of an experienced court-appointed mediator. The settlement allows the parties to avoid all of the risks and expenses of litigation, which in this case would be extensive given the legal disputes. Finally, there is obviously no fraud or collusion involved here.

Notably, no extra factors support denying the settlement. In particular, the release is limited to wage-and-hour claims, and there is no confidentiality provision.

Finally, the attorneys' fees are reasonable. Under the agreement, my firm will receive $7,000 in attorneys' fees, which represents one-third of the settlement. Courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases. Guajardo, 2020 WL 1922642, at *3; Meza v. 317 Amsterdam Corp., No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015); Merino Leon v. Univ 45 Fruit & Vegetable Corp., No. 19-CV-8266 (RA), 2020 WL 1322580, at *2 (S.D.N.Y. Mar. 20, 2020); Carrion v. 381 North Ave. Auto Care Inc. et al, Case No. 19-CV-05901 (Magistrate-Judge Davison - October 29, 2019).

If the Court wishes to engage in a lodestar check, Plaintiff's attorneys' fees are $8,150.00. Plaintiff is requesting a multiplier of .86, which is certainly reasonable because this case settled early before motion practice or significant discovery and the parties actively worked together to minimize costs. Courts have recognized that reducing fees below the typical one-third because of early settlement has the "potential to create a disincentive to early settlement." Hyun v. Ippudo USA Holdings, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 418 (2d Cir. 2010)).

I am the only attorney who worked on this case. I am requesting an hourly rate of $500. I am a partner at Fisher Taubenfeld LLP. I was admitted to the Bar of the State of New York in 2008 and since then have practiced labor and employment law, with a strong focus on wage-and-hour law. I have litigated as the primary attorney dozens of FLSA cases and have been designated class counsel in a FLSA case in this District in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (GRB)(SIL), where I recently won partial summary judgment in the hundreds of thousands of dollars for the class. I have also successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020). I am a member of the New York chapter of the National Employment Lawyers Association (NELA-NY) and have been invited to give CLEs on the FLSA. I have also been named a "Rising Star" by Super Lawyers. Another court in this Circuit recently approved $500 an hour for a named partner in a FLSA case. Canales v. Norwich Serv. Station Inc., No. 20-CV-4759(JMW), 2021 WL 5759727, at *5 (E.D.N.Y. Dec. 3, 2021).

The hours expended are appropriate as well. I spent 16.3 hours on this matter. The work performed in this case included meeting with the client, drafting the complaint, undergoing settlement discovery, drafting damages calculations, attending the mediation, negotiating the settlement and reviewing the settlement documents, and drafting the settlement approval documents. The fees are therefore appropriate. Accordingly, the Court should approve Plaintiff's attorneys' fees.

Thank you for your attention to the above.

Respectfully Submitted,

--------------------/s/----------------
Michael Taubenfeld

Encl.